UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| DIANNA JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 12-40-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The plaintiff, Dianna Johnson, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) to obtain judicial review of an administrative decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI"). The Court, having reviewed the record and for the reasons stated herein, will deny Johnson's Motion for Summary Judgment [R. 10], and grant that of the Commissioner [R. 11.]

**I.**

Johnson protectively filed her application for SSI on November 10, 2008. [Transcript ("Tr.") 19.] She alleged disability beginning December 15, 2007 due to a schizoaffective bi-polar disorder, obsessive compulsive disorder, mitral valve prolapse, narcolepsy with seizures, chronic obstructive pulmonary disorder, fibromyalgia, headaches, restless leg syndrome, back problems, thyroid problems and memory

1

problems.[1]  [Tr. 98, 116.]  Johnson's application was denied initially on May 21, 2009 [Tr. 56] and upon reconsideration on July 21, 2009 [Tr. 57.]  An Administrative hearing was conducted before Administrative Law Judge ("ALJ") Donald A. Rising on April 13, 2010.  [Tr. 32-55.]  During the hearing, the ALJ heard testimony from Johnson and Vocational Expert ("VE") Cathy Sanders.  At the time of the hearing, Johnson was a forty-five-year-old former caregiver with a high school education.  [Tr. 37-38.]

In evaluating a disability claim, an ALJ conducts a five-step analysis.  See 20 C.F.R. 416.920.[2]  First, if a claimant is working at a substantial gainful activity, he is not disabled.  20 C.F.R. § 416.920(b).  Second, if a claimant does not have a severe impairment, he is not disabled.  20 C.F.R. § 416.920(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix I, he is disabled.  20 C.F.R. § 416.920(d).  Fourth, if a claimant's impairments do not prevent him from performing past relevant work, he is not disabled.  20 C.F.R. § 416.920(e).  Fifth, if a claimant's impairments (considering his residual functional

---

[1]The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date.  *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).

[2]The Sixth Circuit Court of Appeals summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile. *Id*. at 474.

capacity, age, education and past work) prevent him from performing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 416.1520(f).

In this action at Step 1, the ALJ found that Johnson had not engaged in substantial gainful activity since the November 10, 2008 application filing date. [Tr. 21.] At Step 2, the ALJ found that she suffered from severe impairments related to syncopal events, a schizoaffective disorder, a somatoform disorder, and obesity. *Id.* At Step 3, the ALJ found that Johnson's impairments did not meet or equal one of the listed impairments. [Tr. 22.] At Step 4, the ALJ determined that she possessed the residual functional capacity ("RFC") to perform a restricted range of work at all exertional levels and could return to her past relevant work as a caregiver. [Tr. 22-23, 25]. Although the case was decided before Step 5 was reached, the ALJ also determined that a significant number of other jobs could be performed in the national economy. [Tr. 25.] Accordingly, on July 21, 2010, the ALJ issued an unfavorable decision, finding that Johnson was not disabled, and therefore, ineligible for SSI. [Tr. 25-26.] The Appeals Council declined to review the ALJ 's decision on December 21, 2011 [Tr. 1-4] and Johnson now seeks judicial review in this court.

## II.

### A.

This Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*; 25 F.3d

3

284, 286 (6th Cir. 1994). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Id*. However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Id*. Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-390 (6th Cir. 1999).

**B.**

Johnson's first argument on appeal is that the ALJ erred by failing to find that her problems with fibromyalgia, chronic obstructive pulmonary disease and low back pain constituted severe impairments. The ALJ noted that while Johnson asserted that she had been diagnosed with fibromyalgia, the current medical record did not reveal specific treatment for this condition. [Tr. 21]. She denied having received treatment for this condition to Dr. Barry Burchett, an examining consultant. [Tr. 570.] The plaintiff also indicated that her pain complaints had recently lessened. *Id*. Dr. Burchett noted only 4 of 18 trigger points upon physical examination. [Tr. 21, 573.] The ALJ found that a chest x-ray taken in January of 2008 had revealed only chronic bronchitis with no pleural effusion or pneumothorax identified. [Tr. 21, 286.] In May of 2009, a pulmonary function study was normal. [Tr. 21, 603.] With regard to her back, a MRI scan of the lumbar spine revealed bulging discs but no herniation. [Tr. 21, 300.]

The evidence cited by Johnson in support of her claim that the ALJ erred in failing to find that these conditions were severe impairments, such as the medical report of Dr. Farooq Ghory from November, 1999 and Dr. Jose Echeveria from 2005, came largely from the time period prior to her SSI application filing date of November 10, 2008 and were even prior to her alleged onset date of December 15, 2007. [Tr. 98.] This was during a time frame when the plaintiff worked as a cashier, baker and caregiver. [Tr. 117.] Obviously, this evidence does not contradict the ALJ's finding that she could return to her past work as a caregiver.

Furthermore, the treating and examining sources who saw Johnson during the relevant time period, such as the staff at Appalachian Regional Healthcare [Tr. 475-528, 538-567] and Dr. Burchett [Tr. 568-575], did not indicate the existence of more severe physical restrictions than were found by the ALJ which related to fibromyalgia, chronic obstructive pulmonary disease and low back pain. The only physical restrictions identified during the relevant period came from the reports of Dr. David Swan [Tr. 605-612] and Dr. Robert Brown [Tr. 617-624], the non-examining medical reviewers both of whom indicated that Johnson would be restricted from climbing ladders, ropes or scaffolds and would need to avoid exposure to hazards. These restrictions were found by the ALJ and presented to the VE. [Tr. 22-23, 52.] Therefore, the court finds no error.

As part of her argument relating to the ALJ's findings with regard to her severe impairments, Johnson cited the physical restrictions identified by Dr. James Bean in February of 1992. [Tr. 745-747.] The court notes that this report was part of a number of exhibits submitted by Johnson directly to the Appeals Council which were never seen by the ALJ. [Tr. 659-747.] This action raises an issue concerning a remand for the taking of

5

new evidence before the Commissioner. *Cotton v. Sullivan*, 2 F.3d 692 (6th Cir. 1993). A court may order additional evidence be taken before the Commissioner, " . . . but only upon a showing that there is new evidence to be taken which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ." 42 U.S.C. § 405(g). The statute provides that a claimant must prove that the additional evidence is both "material" and that "good cause" existed for its not having been submitted at an earlier proceeding. *Sizemore v. Sec. of Health and Human Servs.*, 865 F.2d 709, 710 (6th Cir. 1988). In order to demonstrate "materiality," a claimant must show that a reasonable probability exists that the Commissioner would have reached a different conclusion if originally presented with the new evidence. Sizemore, 865 F.2d at 711. The party seeking the remand bears the burden of showing that a remand is proper under § 405. *Willis v. Sec. of Health and Human Servs.*, 727 F.2d 551 (6th Cir. 1984). In the present action, the plaintiff has not adduced any arguments as to why such a remand would be required.

## C.

Johnson also argues that the ALJ did not properly evaluate her subjective pain complaints. Pain complaints are to be evaluated under the standards announced in *Duncan v. Sec. of Health and Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986): there must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

In the present action, Johnson was found to be suffering from a potentially painful condition. [Tr. 21.] However, even if she could be found to have satisfied the first prong of the so-called *Duncan* test, the claimant does not meet either of the alternative second prongs. The ALJ cited the findings of Dr. Burchett upon physical examination in February of 2009. These included a normal gait, being stable standing and comfortable sitting and supine. [Tr. 24, 571.] She was not short of breath with exertion or lying flat, accessory muscles were not utilized upon respiration and clubbing or cyanosis not detected. *Id*. Straight leg raising was negative both sitting and supine and deep tendon reflexes were all normal. [Tr. 24, 572]. Neurological examination was unremarkable. [Tr. 24, 573.] She reported being able to bathe and dress herself, shop for groceries and cook. [Tr. 23, 49.] Thus, the medical evidence does not appear sufficient to confirm the severity of the alleged pain and objective medical evidence would not appear to be consistent with the plaintiff's claims of disabling pain. Therefore, the ALJ properly evaluated Johnson's pain complaints.

**D**.

Finally, Johnson asserts that the ALJ erred in evaluating her mental condition by omitting restrictions from the RFC made by Psychologists Jay Athy and Lea Perritt, the non-examining medical reviewers. Athy and Perritt each opined that the plaintiff would be moderately limited in such areas as understanding, remembering and carrying out detailed instructions, maintaining attention and concentration for extended periods, completing a normal workday and workweek without interruption from psychologically-based symptoms, performing at a consistent pace without an unreasonable number and

length of rest periods, interacting appropriately with the general public, and responding appropriately to changes in the work setting. [Tr. 584-585, 613-614.]

The only mental limitations included in the RFC were a restriction to simple, 1-2 step tasks/instructions in nonpublic settings. [Tr. 23.]. However, the treating staff at the Cumberland River Comprehensive Care Center only indicated slightly low ability in such areas as societal/role functioning and interpersonal functioning. [Tr. 653.] The only mental limitation identified by Psychologist Jeanne Bennett, an examining consultant, was a slight restriction in dealing with work stress and pressures. [Tr. 582.] The ALJ's findings were consistent with these opinions of mental health sources who actually treated and examined Johnson. Under the Federal Regulations at 20 C.F.R. § 416.927(d)(1) and (2), the opinions of these sources would generally be entitled to greater weight then the opinion of non-examiners. Thus, the ALJ's findings with regard to Johnson's mental condition fairly characterized her condition as required by *Varley v. Sec .of Health and Human Servs.*, 820 F.2d 777 (6th Cir. 1987).

### III.

Accordingly, and the Court being sufficiently advised, it is hereby ordered as follows:

(1) Plaintiff's motion for Summary Judgment [R. 10] is **DENIED**;

(2) Defendant's Motion for Summary Judgment [R. 11] is **GRANTED**; and,

(3) **JUDGMENT** in favor of the defendant will be entered contemporaneously herewith.

This 11th day of January, 2013.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge